UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MONICA WELLS, on behalf of M.W.,                CIVIL ACTION
a minor, and others similarly situated

VERSUS

KATHY KLIEBERT, Secretary of                    NO. 14-00155-JJB-RLB
Louisiana Department of Health
and Hospitals, and the LOUISIANA
DEPARTMENT OF HEALTH AND
HOSPITALS

## RULING

Before the Court is Plaintiffs' *Second Supplemental Motion to Enforce Stipulation*

*and Order.*[1]    Defendants, the Louisiana Department of Health and Hospitals

("Department") and Dr. Rebekah Gee, in her official capacity as Secretary of the

Department, have filed an *Opposition* to which Plaintiffs have filed a *Reply.*[2]

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This action was originally initiated on March 18, 2014 by Plaintiff, M.W., a minor,

represented through Monica Wells, her mother, on behalf of herself and the class of

Medicaid recipients she represents, against the Secretary of the Department and the

Department for their failure to provide constitutionally adequate notice allegedly of the

whole or partial denial of Medicaid services.[3]   When M.W.'s physician prescribed an

increase in her home nursing hours from 30 hours per week to 56 hours per week,

Louisiana Medicaid only authorized 40 of the prescribed hours.[4]  The notice that Louisiana

---

[1] Doc. 57.

[2] Doc. 65 and Doc. 69.

[3] Doc. 1.

[4] Doc. 1, p. 2, ¶¶1-2; p. 10, ¶44-45.  According to the *Complaint*, the original 30 hours had been approved by Louisiana Medicaid, which covers home nursing services.  Doc. 1, p. 2, ¶1.

Medicaid issued to M.W. offered no reason for the denial of the 16 of the 56 requested hours.[5]  In response to this notice, Plaintiff brought this 42 U.S.C. § 1983 action seeking injunctive relief to enjoin the Department from denying Medicaid services to recipients without giving them a meaningful opportunity to understand, review, and to challenge, when necessary, the Department's decision to deny in part or whole their requests for services.[6]   Plaintiff also asserted violations against the Defendants under the Medicaid Act, Title II of the Americans with Disabilities Act, and §504 of the Rehabilitation Act.

On October 24, 2014, the Court entered an *Order of Class Certification and Partial Dismissal*.[7]  In its *Order* certifying the class, the Court defined the "class" as follows:

> all Louisiana Medicaid recipients, except persons under the age of 21 who are on the waiting list for the New Opportunities Waiver, who have been or will be subjected to denials or partial denials of prior approval of services while the Court retains jurisdiction to enforce the parties' Stipulation.[8]

In its *Order*, the Court also approved the parties' *Stipulation and Order of Dismissal* and directed the parties to comply with the terms set forth therein.  The Court explained that it would retain jurisdiction of the action to ensure that the Stipulation was implemented and enforced, and to resolve "any disputes that [might] arise in the future regarding the Stipulation and orders, their terms, or the enforcement thereof."[9]

Less than a month later, on November 17, 2015, the Plaintiffs filed a *Motion to Enforce Stipulation*, which was opposed.[10]  The Class of Plaintiffs then filed a *Supplemental Motion to Enforce Stipulation*, which was also opposed.[11]  On March 24,

---

[5] Doc. 1, p. 2, ¶2; pp. 10-11. ¶¶45-46.

[6] Doc. 1, p. 2, ¶3.

[7] Doc. 20.

[8] Doc. 20.

[9] Doc. 20.

[10] Doc. 21; Doc. 34 (*Opposition*); Doc. 37 (*Reply*).

[11] Doc. 39; Doc. 44 (*Opposition*).

2016, the Court held a Status Conference with the parties.[12]  During the conference the Court ordered the parties to meet within 2 weeks and to apprise the Court of any progress that had been made.  In the event resolution could not be reached, the Court instructed it would conduct a hearing.

On June 20, 2016, the parties submitted a *Joint Motion to Stay Plaintiff's Motion to Enforce Stipulation and Order*.[13]  On June 22, 2016, the Court granted the parties 60 days to attempt to reach an agreement resolving the issues.[14]  On September 14, 2016, the Court entered an *Order* dismissing the *Motions to Enforce Judgment* without prejudice to being refiled on narrow issues that counsel could not resolve.[15]  Subsequently the parties engaged in "extensive negotiations" and were able to reach an *Agreement in Partial Resolution of Plaintiffs' Motion to Enforce Stipulation and Order*, which was filed into the record.[16]

However, there remained three other issues that the parties were unable to resolve and which are the subject of the instant *Motion*.  In their *Second Supplemental Motion to Enforce Stipulation and Order*, Plaintiffs argue that the parties have been unable to reach agreement on the following three issues:   (1) Notices denying admission to the Coordinated System of Care; (2) Notices denying Emergency New Opportunities Waivers ("NOW"); and (3) the Department's determination that its contractors, specifically Molina Medicaid Solutions ("Molina"), do not need to send out notices when the reasons for the automatic denial are: the requested procedure is specialty restricted; the requested

---

[12] Doc. 41.
[13] Doc. 46.
[14] Doc. 47.
[15] Doc. 48.
[16] Doc. 56.

services are the responsibility of a Nursing Home or Intermediate Care Facility ("ICF/DD");

the procedure does not require prior authorization; or that an invalid procedure code was

used to request the item or service.[17]

On May 23, 2017, the Court held another status conference with the parties to

address these three issues.[18]  During the conference, the parties agreed that they could

resolve the notice issues concerning the Emergency NOW denials.[19]  Therefore, the

Court considers this a moot issue.  The Court's analysis will focus on the issuance and

substance of notices of denial during the CSoC process and the decision not to require

Molina to issue denial notices under all circumstances.

## II.   LEGAL STANDARD

"A 'consent decree' is a court order that embodies the terms agreed upon by the

parties as a compromise to litigation."[20]  Therefore, consent decrees are similar to

contracts, but also function as judicial orders.[21]  The general principles of contract

interpretation govern when construing the terms of a consent decree.[22]  Thus, a consent

decree should normally be construed by reference to the "four corners" of the order

itself.[23]  When interpreting the terms of a consent decree, a court should construe the

decree's terms according to their plain meaning and "not impose additional obligations

beyond those memorialized in the parties' agreement."[24]  Ultimately, "district courts have

---

[17] Doc. 57.

[18] Doc. 71.

[19] Doc. 71. ("The parties agreed they can work on sufficiency of New Opportunities Waiver (NOW) denials.").

[20] *Chisolm ex re. v. Greenstein*, 876 F.Supp.2d 709, 712 (E.D.La. 2012).

[21] *U.S. v. Chromalloy American Corp.*, 158 F.3d 345, 349 (5th Cir. 1998).

[22] *Id.*

[23] *Id.* at 350.

[24] *Chisolm*, 876 F.Supp.2d at 713 (citing *United States v. Alcoa, Inc.* ("*Alcoa*") 533 F.3d 278, 286 (5th Cir. 2008)).

the power and ordinarily must hold parties to the terms of a consent decree … [and] have wide discretion to enforce decrees and to implement remedies for decree violations."[25]

## III.  ANALYSIS

### A.  Notice Requirements for the Coordinated System of Care ("CSoC")

Plaintiffs claim that the Defendants have failed to comply with the *Stipulation and Order of Partial Dismissal* ("Stipulation") in connection with the notices of denial for admission to the CSoC for two reasons.  First, Plaintiffs argue that Defendants have failed to issue notices of denial at each stage of the screening process for the CSoC services; Plaintiffs claim that this is in violation of Paragraph 7 of the *Stipulation*.[26]  Second, Plaintiffs argue that the notices of denial are inadequate.

### i.  Are Denial Notices Required During the CSoC Screening Process?

The CSoC Waiver operates in Louisiana's Medicaid Program to provide a comprehensive system of delivery for specialized behavioral health and physical services.[27]  The services delivered through the CSoC are administered in collaboration with managed care organizations ("MCOs") and the CSoC contractor, Magellan Health of Louisiana ("Magellan").[28]  Magellan is "responsible for the necessary operational and administrative functions to ensure adequate service coordination and delivery."[29]  As part of its responsibilities, Magellan promulgated a manual for Standard Operating Procedures ("SOP manual") to provide guidelines for screening and assessment for CSoC.[30]

---

[25] *Alcoa,* 533 F.3d at 286.
[26] Paragraph 7 of the *Stipulation and Order of Dismissal* defines the terms denial and partial denial.  Doc. 15-1, p. 3.
[27] La. Admin. Code. tit. 50, pt. XXXIII.101(A).
[28] La. Admin. Code. tit. 50, pt. XXXIII.101(A).
[29] La. Admin. Code. tit. 50, pt. XXXIII.101(A)
[30] Doc. 57-3.  This manual for SOP for Louisiana CSoC was revised in February of 2016.

5

After reviewing the evidence, specifically the Louisiana SOP manual, the Court construes the CSoC screening process as follows. Initially, children are referred to the CSoC by their parent/guardian by contacting the MCO in which the child is enrolled.[31] The MCO will conduct a preliminary screening (1st Stage of Screening), and if the parent/guardian answers "Yes" to any of the three risk questions, then the MCO will provide a "warm transfer" over the telephone involving the MCO, the parent/guardian, and the CSoC contractor.[32] At this time, the CSoC contractor will conduct additional screening (2nd Stage of Screening) using the Brief Child and Adolescent Needs and Strengths ("CANS") tool, which evaluates four domains.[33] If the child's scores reflect risky behavior, then the child is determined to be "presumptively eligible" and is referred to a Wraparound Agency ("WAA") and the Family Support Organization ("FSO"). The presumptive eligibility period for a child may not exceed 30 calendar days.[34]

During the presumptive eligibility period, the WAA is responsible for ensuring several things, including that the parent/guardian is aware of their options for services via CSoC or in a residential setting; convening the Child and Family Team ("CFT"); developing the Initial Plan of Care ("POC"); and ensuring the child/youth and family receive authorized services throughout the period of presumptive eligibility.[35] The WAA is also responsible for ensuring the completion and submission of the Child and

---

[31] Doc. 57-3, p. 6, §301.

[32] Doc. 57-3, pp. 6-7, §301.

[33] Doc. 57-3, p. 7, §301. ("Once the child/youth is referred to the CSoC Contractor, the CSoC Contractor's Care Manager will conduct an initial screening using the Brief Louisiana Child and Adolescent Needs and Strengths (CANS) tool, which looks at the following four domains: a. Risk – To Self and Others; b. Functioning – Family and Community Functioning; c. Clinical – Emotional or Behavioral Functioning; and d. Caregiver – Child/Youth's Caregiver.").

[34] Doc. 57-3, p. 7.

[35] Doc. 57-3, pp. 7-8.

Adolescent Needs and Strengths Comprehensive ("CANS Comprehensive")[36] and the Independent Behavioral Health Assessment ("IBHA")[37] form within 30 calendar days of receipt of referral.[38]

After administering the CANS Comprehensive and the IBHA (3rd Stage of Screening), a child who has been determined to be presumptively eligible may be still be screened out of the CSoC based on his/her results.[39]

It is undisputed that if a child who has been deemed to be presumptively eligible is subsequently found to be ineligible for service delivery through the CSoC, the Department issues denial notices to those children.[40]  The dispute between the parties is whether the Department is required to send out denial notices when a child is screened out during the initial "screening stages" (1st and 2nd Stages).

Plaintiffs take the position that because the services delivered through the CSoC (Wraparound Facilitation; Parent Support and Training; Youth Support and Training; Independent Living/Skills Building; Short-term Respite; Crisis Stabilization) are not available unless a person is found eligible for the CSoC, a denial of eligibility for the waiver at any stage, including the screening process, constitutes a denial of all of the services in

---

[36] Doc. 57-3, p. 8, §401.  The CANS Comprehensive is "a multipurpose tool developed to support care planning and level of care decision-making, to facilitate quality improvement initiatives, and to allow for the monitoring of outcomes.  The CANS was developed from a communication perspective to facilitate the linkage between the assessment process and the design of individualized service plans including the application of evidence-based practices.   Domains assessed include general symptomology, risk behaviors, developmental functioning, personal/intrapersonal functioning, and family functioning.   The Comprehensive CANS is used to support the development of the individualized plan of care."

[37] Doc. 57-3, p. 9, §402.  The IBHA is "based on a thorough, face-to-face assessment of the individual's most recent behavioral/mental status, any relevant history, including findings from the CANS comprehensive, medical records, objective evaluation of functional ability, and any other available records. It is completed by a Licensed Mental Health Professional (LMHP) who is also certified as a CANS assessor. The IBHA and completed CANS Comprehensive Assessment are submitted to the CSoC Contractor within 30 calendar days of the date of referral."

[38] Doc. 57-3, p. 8.

[39] Doc. 57-3, pp. 11-13 (Chapter 5: Enrollment Process).

[40] This is an undisputed fact among the parties.  Doc. 57-11, p. 7; Doc. 57-6.

7

the package.  Therefore, Plaintiffs argue that the first two stages of the screening process for the CSoC services fall within the scope of the *Stipulation* and require written notices of denial.

The Defendants disagree.  Defendants contend that when a child is screened out at either of the first two stages, notices are not required because (1) the parents are involved in the first two stages and are in contact with the child's MCO Plan for assistance and guidance; (2) the MCO continues to provide behavioral health services to the child that have already been pre-authorized; and (3) the child's Medicaid provider is not requesting prior approval for services through the MCO or through Louisiana Medicaid in relation to the CSoC screening process or CSoC service delivery before administration of the Brief CANS.

Pursuant to the *Stipulation* the terms "denial" and "partial denial" are defined as follows:

> The terms "denial" and "partial denial" refer to situations in which services or items requested are not fully approved, including any situation in which a service or item other than the exact service or item requested is approved. Denials and partial denials are within the scope of the claims whether denied directly by Medicaid, or by a contractor with Louisiana Medicaid. Partial denials include, but are not limited to, situations where a service has been requested for a period of time and is approved for a shorter period of time, fewer hours of a service than requested are approved, or a different item or service from that requested is approved.  Denials and partial denials also include but are not limited to situations where previously approved services are being terminated or reduced.  Partial denials also include decisions where the Department or contractor approve the requested item or service, but sets the amount to be reimbursed lower than that requested … No separate notice as to prior approval need issue when a recipient is or has been notified in writing that their Medicaid eligibility is ending.[41]

---

[41] Doc. 15-1, p. 3, ¶7.

On this point, the Court finds that the Plaintiffs interpretation of the terms denial and partial denial is too broad. During the first two stages of the screening process, there have been no requests for prior approval of services made by a Medicaid provider on behalf of the child through Louisiana Medicaid in relation to service delivery through the CSoC. As the Court interprets the CSoC process, the first two stages simply operate to determine who will be eligible to make such prior approval requests for those services that the MCO is unable to provide. Because there have been no requests for prior approval of services during the two screening stages, then there can be no denial of any services during these stages.

However, at the third stage, when a child is determined to be presumptively eligible, requests for prior approval for services are made when the POC for service delivery through the CSoC is developed. Therefore, the Court finds that if, after a more in-depth screening the presumptively eligible child is screened out, then a denial notice is necessary because under the rules of the program the service delivery through the CSoC is being terminated.[42] It is only in this situation that the Department needs to issue a notice because a denial under the terms of the *Stipulation* has occurred. Accordingly, the Court finds that the Defendants are not in violation of the *Stipulation* for not issuing notices of denial during the first two stages of the screening process for service delivery through the CSoC.

ii.     Are the CSoC Notices of Denial Sufficient?

Plaintiffs also argue that the CSoC denial notices that have been issued to recipients found presumptively eligible are insufficient for four reasons: (1) the notices

---

[42] Doc. 57-3, p. 5, §201 (a child "[m]eets clinical eligibility for CSoC as determined by the Child, Adolescent Needs and Strengths (CANS) Comprehensive scale" to be eligible for CSoC).

9

failed to explain the criteria for eligibility, how the criteria were applied to the individual's case, and lacked any specific, individualized information upon which the agency made its decision to deny benefits; (2) the notices do not use plain language to describe the services that are the subject of the notice (i.e., a layperson will not understand what a "wraparound function" is); (3) the notices fail to explain to class members their full rights on appeal; and (4) the notices do not prominently use the words "denied" or "denial."[43]  In response, Defendants contend that the latest December 14, 2016 template for the CSoC denial notices remedies several of the Plaintiffs' concerns.[44]  Plaintiffs maintain that the eligibility requirements are still vague and subjective, and the notices still fail to identify any specific findings that led to a determination of ineligibility.

Under the terms of the *Stipulation*, in order for a notice of adverse action to be deemed adequate, it must include the following:

(A)  The notice shall describe the specific reasons for the denial or partial denial of the requested item or service, in plain language and in sufficient detail to inform the recipient and his or her physician of any further information needed to support the request, including information that:

(1)  describes the considerations that played a role in the assessor's determination of what items or services, and how many hours or amounts of the item or service, should be authorized;

(2)  would assist the recipient in understanding why the item or service is being denied or partially denied;

(3)  would enable the recipient to review the agency's assessment of his or her needs; and

(4)  would assist the recipient in preparing a meaningful defense in the event that he or she wishes to appeal the agency's determination.[45]

---

[43] Doc. 57-11, pp. 9-11.

[44] Doc. 65-3.

[45] Doc. 15-1, pp. 3-4.  The *Stipulation* also provides the following definition of plain language: "language that the intended audience, including individuals with limited English proficiency, can readily understand

In the context of the denial of public benefits, due process requires that recipient receive "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally."[46] As for the first prong, there is a body of case law involving the constitutionality of notices that stands for the position that adequate notice, for purposes of due process, requires more than a statement of the "ultimate reason" for the adverse state action.[47] If the recipients are not provided with sufficient information to understand the basis for the agency's decision, then they "cannot know whether a challenge to an agency's action is warranted, much less formulate an effective challenge."[48] Therefore, "the explanation of the proposed action and of the reasons for the action must be detailed enough to allow for a meaningful hearing."[49] In considering whether due process has been met, the Court must weigh the private interest at stake; "the risk of an erroneous deprivation"; the government's interest, including the burden of imposing additional procedural requirements; and "the probable value, if any, of additional or substitute procedural safeguards."[50]

After reviewing the December 14, 2016 template for the CSoC notice of denial, the Court finds that it fully explains the full rights of class members on appeal, including their

and use because the language is concise, well-organized, and follows best practices of plain language writing." Doc. 15-1, p. 4.

[46] *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970).

[47] *See, Vargas v. Trainor*, 508 F.2d 485 (7th Cir. 1974), *cert. denied*, 420 U.S. 1008 (1975); *Banks v. Trainor*, 525 F.2d 837 (7th Cir. 1975), *cert. denied*, 424 U.S. 978 (1976); *Dilda v. Quern*, 612 F.2d 1055 (7th Cir. 1980), cert denied, 447 U.S. 935 (1980)); *Ortiz v. Eichler*, 794 F.2d 889 (3rd Cir. 1986); *Unan v. Lyon*, 853 F.3d 279, 291 (6th Cir. 2017)(quoting *Goldberg*, 397 U.S. at 267-68)).

[48] *Brooks v. Roberts*, 16-CV-1025, 2017 WL 1831604, *17 (N.D.N.Y. May 5, 2017)(quoting *Kapps v. Wing*, 404 F.3d 105, 124 (2nd Cir. 2005)).

[49] *Barry v. Corrigan*, 79 F.Supp.3d 712, 741 (E.D. Mich. 2015)(citing *Morgan v. United States*, 304 U.S. 1 (1938)).

[50] *Lyon*, 853 F.3d at 291-92 (quoting *Matthews v. Eldrige*, 424 U.S. 319, at 335 (1976)).

11

right to submit proof in support of their appeal, to review their case file before and during the appellate process, and to ask for a State Fair Hearing if their appeal is not successful.[51] On the first page of the notice, the word "denial" is prominently displayed in bold font.[52] The template also provides plain language explanations for the various services that are offered through the CSoC program.[53] The remaining points of contention concern the adequacy of the explanations of the eligibility requirements and findings that led to the determination of ineligibility.

To be deemed eligible for the CSoC services, a child must display "moderate" problems in his/her CANS interview and assessment.[54] Plaintiffs argue that because the term "moderate" is not defined and there is no description of the specific problems the applicant does display, they lack basic information to assess what factors were accurately and inaccurately considered by the Department. Plaintiffs claim that this affects their ability to pursue an appeal of the Department's determination.

During the May 23, 2017 status conference with the parties, the Court instructed the Department to provide any available definitions for the CANS measurement tools (i.e., "mild", "moderate", and "severe").[55] In a subsequent correspondence to the Court and counsel of record, the Department advised that the CANS tool "dictates these terms" and that "[n]o alternatives are available for use within the tool, and no further description

---

[51] Doc. 65-3, p. 3. It also sets forth the time period for seeking an appeal and directs the class member to either appeal in writing or by phone. The notice also includes a 1-800 phone number for class members to call in the event they have questions about or need assistance with the letter.

[52] Doc. 65-3, p. 1. "**Notice of Denial—Clinical Ineligibility**" is printed at the top of the first page of the letter in bold.

[53] Doc. 65-3, p. 1. The terms "wraparound services," "parent and youth support and training", "crisis stabilization services," "short term respite services," and "independent living skills training" are defined or explained in the notice.

[54] Doc. 65-3; Doc. 65-4.

[55] Doc. 71.

defines these terms."[56]  The Court has reviewed the CANS manual for Louisiana as well as the CANS Comprehensive form and agrees with the Department.[57]   The CANS measurement terms are terms of art used to render scores on the assessment tool itself. As the Department correctly points out in its *Opposition*, "[a]ny attempt to use other language would dilute the meaning of these terms and would be misleading to the recipient" thereby resulting in violations of other provisions of the *Stipulation*.[58]

Also during the May 2017 status conference, the Department stated that Magellan could attach the final copy of the CANS scoring to the notice of denial to assist the applicants in the future.[59]  The Department reiterated its willingness to provide copies of the CANS scoring with each notice of denial in a subsequent correspondence with the Court and parties.[60]   The Court finds that this additional information would provide valuable insight into the Department's decision to deny services, and would assist the applicant in preparing a meaningful defense for appellate purposes.  Additionally, the Court finds that requiring the Department to provide a final copy of the CANS scoring with the notice of denial would place a relatively low burden on the Department.  Accordingly, the Court hereby directs the Defendants to provide this additional information with the denial notices issued to a child deemed ineligible for the CSoC services.[61]

For the foregoing reasons, the Court finds that the Department is not in violation of the *Stipulation* for using the CANS measurement terms without offering an additional

---

[56] Facsimile attached to this *Ruling* (Correspondence from Department to the Court and counsel of record dated June 1, 2017).
[57] Doc. 65-4; and http://praedfoundation.org/tools/the-child-and-adolescent-needs-and-strengths-cans/.
[58] Doc. 65, p. 6.
[59] Doc. 71.
[60] Facsimile attached to this *Ruling* (Correspondence from the Department to the Court and counsel of record dated June 1, 2017).
[61] Again, notices of denial need only issue when a child, who has been found to be presumptively eligible for CSoC services, is subsequently found to be ineligible for such services.  *See* Section III(A)(i).

definition or explanation for said terms. Moreover, the Court finds that requiring the Department to attach a final copy of the CANS scoring to the notice of denial will provide the Plaintiffs with the specific information upon which the denial is based for appeal purposes.

B.    Should Molina Issue Notices of Denial Under All Circumstances?

Plaintiffs argue that the Department's instruction to Molina, a contractor that issues prior authorizations, to not issue notices of denial to recipients in four certain instances violates the parties' *Stipulation*. The Department has informed Molina that it need not issue notices of denial when the reasons for denial are (1) the requested procedure is specialty restricted (Code 237); (2) when the requested services are the responsibility of a nursing home or ICF/DD facility (Code 988); (3) when the procedure does not require prior authorization (Code 025); and (4) when an invalid procedure code was used to request the item or service (Code 057).[62]

The parties take two different approaches on this issue. Plaintiffs limit their analysis to the provisions of the *Stipulation*. Pursuant to their agreement, the terms "denial" and "partial denial" refer to situations where requests for prior authorization of services or items are not fully or partially approved, including any situation in which a service or item other than the exact service or item requested is approved. They argue that because prior approval of services was requested in each of the four instances and not fully approved, then a notice of denial must be issued to the recipients per the *Stipulation*.

---

[62] Doc. 57-2; Doc. 57-4.

In contrast, Defendants take a broader approach to tackle Plaintiffs' argument. Defendants contend that the *Stipulation* does not operate in a vacuum, and the purpose for issuing denial notices is "to comply with due process regarding the deprivation of covered, public benefits protected by the fair hearing process" required by federal Medicaid regulations and state law.[63]  Under federal Medicaid regulations the Department "must grant an opportunity for a hearing to … [a]ny individual who requests it because he or she believes the agency has taken an action erroneously, denied his or her claim for eligibility or for covered benefits or services, or issued a determination of an individual's liability, or has not acted upon the claim with reasonable promptness."[64]  Pursuant to La. R.S. 46:107, the Department shall provide an opportunity for a hearing "to any applicant or recipient who makes a timely request for a hearing because his claim for assistance, services, or food stamps is denied or is not acted upon with reasonable promptness and to any recipient who is aggrieved by an agency action resulting in suspension, reduction, discontinuance, or termination of benefits."  Defendants contend that the Plaintiffs have failed to allege or provide evidence of a deprivation of covered benefits in these four situations so as to trigger any due process rights that would, in turn, require them to issue denial notices to the recipients.

In considering the parties' respective arguments, the Court is cognizant of its responsibility to construe the consent decree's terms according to its plain meaning and "not impose additional obligations beyond those memorialized in the parties' agreement."[65]    Nonetheless, the Court cannot overlook the fact that one of the

---

[63] Doc. 65, p. 8.
[64] 42 C.F.R. §431.220(a)(1).
[65] *Chisolm*, 876 F.Supp.2d at 713 (citing *Alcoa*, 533 F.3d at 286).

fundamental purposes for issuing the denial notices is to ensure that the recipients are provided with sufficient information to challenge the Department's adverse decision regarding covered, public benefits on appeal. With this in mind, the Court shall address each of the four procedure codes in turn.

For situations involving code "025 – Procedure does not require prior authorization," the Court finds that this code is not covered by the class definition or claims set forth in the *Stipulation*. The class encompasses persons under the age of 21 who have been or will be subjected to denials or partial denials of prior approval of services.[66] Class member claims shall "include the denial, the partial denial, or the failure to issue a response to a *request for prior authorization of services*."[67] From the name of the procedure code itself—"does not require prior authorization"—it is clear to the Court that a situation involving this procedure code does not fall within the Plaintiffs' class definition or claims. More importantly, when prior approval is unnecessary, then the recipient will receive the services regardless, and there will be no deprivation of covered public benefits. Accordingly, the Court finds that because this situation is not subject to the parties' *Stipulation*, the Department does not need to issue a denial notice in this instance.

For similar reasons, the Court finds that denial notices are not necessary in situations involving code "988 – These services are the responsibility of the Nursing Home or ICF/DD facility." As explained by the Department, federal regulations permit Louisiana Medicaid to determine its own method of reimbursement for such facilities.[68] Louisiana Medicaid has elected to reimburse the nursing facility at its daily rates for the services

---

[66] Doc. 15-1, p. 2, ¶4.
[67] Doc. 15-1, p. 2, ¶6. (emphasis added)
[68] 42 C.F.R. § 447.253.

provided to the recipient.[69]  Because the services for the recipient are already reimbursed by Louisiana Medicaid through the daily rate, prior approval or authorization for services is unnecessary.  In sum, due to the arrangement with Louisiana Medicaid, the nursing facility must provide the service to the recipient.[70]  Since prior approval is unnecessary in this instance, the recipient will receive the services and there will be no denial of any covered public benefit by the Department.[71]  Accordingly, the Court finds that this situation is also not subject to the parties' *Stipulation*; therefore, the Department is not in violation of the *Stipulation* for not issuing denial notices in this instance.

When requests for prior approval are denied because of "057-Invalid Procedure Code" the Court finds that the Department does not need to issue denial notices to the recipient.  In this situation, the system automatically denies the provider's request because the provider has used an "obsolete" procedure code.[72]  When this code is rendered, there has been no actual determination of whether the recipient is entitled to any covered public benefit.  In other words, at this stage, there has been no denial or partial denial of a covered public benefit.  Instead, the medical provider is being redirected to provide the proper information in order for such a determination to be made.  Only when the medical provider resubmits a valid procedure code can the Department make a determination of whether the requested service should be approved or denied.

---

[69] LAC 50:II.20005(C).  ("Each facility's Medicaid daily rate is calculated as: 1. the sum of the facility's direct care and care related price; 2. the statewide administrative and operating price; 3. each facility's capital rate component;   4. each facility's pass-through rate component; 5. adjustments to the rate; and 6. the statewide durable medical equipment price.")

[70] 42 U.S.C. § 1396r; 42 C.F.R. § 483.25.

[71] The Court also finds merit in the Department's argument that Plaintiffs' counsel "confuse[s] lack of approval of a service for which no approval is required with the deprivation of a public benefit and would have the recipient be noticed of appeal rights where none lie."  Doc. 65, p. 9.

[72] Doc. 57-2.

The same analysis applies to those situations where the code "237 – Procedure is specialty restricted" is issued. In such instances, the procedure code requested has a specialty restriction. If the physician submitting the requests lacks the required specialty, then the request is automatically denied and returned to the physician to correct and resubmit, or to re-route through a physician with the required specialty. Importantly, at this stage, there has been no denial of any covered public benefit or service. The Department has not made such a determination due to an administrative error on the part of the medical provider. Like the invalid procedure code, it is only when the medical provider with the appropriate specialty submits a request for approval of services that the Department will be able determine whether the requested service should be approved or denied.

The Court also finds merit in the Department's argument that the issuance of notices in situations involving improper procedure codes 025 and 057 would result in unnecessary confusion. These codes involve administrative matters that only the medical provider can remedy. As previously discussed, one of the purposes for the issuance of notices of denial under the terms of the *Stipulation*, applicable jurisprudence, and Louisiana Medicaid regulations is to protect the recipients' due process rights to appeal when the state denies them a covered public benefit. In situations involving the improper procedure codes 025 and 057, the Department has made no decision to deny the request for prior approval of covered public services; therefore, situations involving these procedure codes cannot be remedied by the recipient through any appellate process. Accordingly, the Court finds that the Department is not in violation of the *Stipulation* for

not issuing denial notices to the recipient when the reason for denial is the use of an invalid procedure code and when the procedure is specialty restricted.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiffs' *Second Supplemental Motion to Enforce Stipulation and Order* is hereby DENIED.[73]

Pursuant to this Court's *Ruling*, the Defendants are hereby ordered to attach a final copy of the CANS scoring to all denial notices issued to a child deemed ineligible for the CSoC services from the date of this *Ruling* going forward.

Signed in Baton Rouge, Louisiana, on July 3 / 5 , 2017.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[73] Doc. 57.

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
|---|---|---|---|---|
| June 1, 2017 1:11:18 PM PDT | LADHH Legal | 70 | 3 | Received |

2017-06-01 13:29        LADHH Legal        2253423805 >>                    P 1/3



John Bel Edwards
GOVERNOR

Rebekah E. Gee MD, MPH
SECRETARY

# State of Louisiana

Louisiana Department of Health
Bureau of Legal Services

## FAX TRANSMITTAL

**DATE:**        6/01/2014

**TO:**        The Honorable James J. Brady

**FROM:**        Ryan Romero

**RE:**        Wells v. Gee, No. 3:14-CV-00155-JJB-RLB (M.D. La.)

**FAX NUMBER:**        (225) 389-4031

### PRIVACY AND CONFIDENTIALITY WARNING:

This message is from an attorney and may contain information that is confidential or legally privileged. Further, this facsimile may contain Protected Health Information (PHI), Individually Identifiable Health Information (IIHI) and other information which is protected by law.

This message is only for the use of the intended recipient. Use by an erroneous recipient or any other unauthorized individual or entity of information contained in, or attached to, this or any other facsimile message may result in legal action.

If you are not the intended recipient, you are hereby notified any review, disclosure/re-disclosure, copying, storing, distributing or the taking of action in reliance on the content of this facsimile and any attachments thereto, is strictly prohibited.

If you are not the intended recipient and/or have received this facsimile in error, please (1) immediately advise the sender by telephone that this message has been inadvertently transmitted to you, and (2) destroy the contents of this facsimile and its attachments by deleting any and all electronic copies and any and all hard copies regardless of where they are maintained or stored.

Thank you for your cooperation.

**PAGES:**        3        (INCLUDING COVER SHEET)

Bienville Building  •  628 N. Fourth St.  •  P.O. Box 3836  •  Baton Rouge, Louisiana 70821
Phone: (225) 342-1128  •  Fax: (225) 342-2232  •  www.ldh.la.gov
An Equal Opportunity Employer



John Bel Edwards
GOVERNOR

Rebekah E. Gee MD, MPH
SECRETARY

# State of Louisiana

Louisiana Department of Health
Bureau of Legal Services

June 1, 2017

*Via Facsimile Only*

The Honorable James J. Brady
U.S. District Court for the Middle District of Louisiana
777 Florida Street
Suite 369
Baton Rouge, LA 70801

RE: *Wells v. Gee*, No. 3:14-CV-00155-JJB-RLB (M.D. La.)

Dear Judge Brady:

Defendants, Dr. Rebekah Gee, in her official capacity as Secretary of the Louisiana Department of Health, and the Louisiana Department of Health, provide the following information in response to the Court's notice (Rec. Doc. 71).

The Child and Adolescent Needs and Strengths ("CANS") tool uses the terms "mild," "moderate," and "severe" as scoring in the individual core items that compose the assessment. The CANS tool dictates these terms. No alternatives are available for use within the tool, and no further description defines these terms. More information can be found in the CANS manual for use in Louisiana, which Defendants filed with the Court as an exhibit attached to their *Response in Opposition to Plaintiffs' Second Supplemental Motion to Enforce Stipulation and Order* (Rec. Doc. 65-4).

There is a CANS scoring sheet that may be attached to Coordinated System of Care ("CSOC") notice of denial. Magellan Health of Louisiana, the CSOC contractor of Louisiana Medicaid, can attach the final copy of the CANS scoring to the notice of denial to assist the applicant.

Respectfully submitted,

Ryan J. Romero
Staff Attorney

Bienville Building · 628 N. Fourth St. · P.O. Box 3836 · Baton Rouge, Louisiana 70821
Phone: (225) 342-1128 · Fax: (225) 342-2232 · www.ldh.la.gov
*An Equal Opportunity Employer*

The Hon. James J. Brady
June 1, 2017
Page 2


cc:  Kimberly Sullivan (via electronic mail to kimberly.sullivan@la.gov)
Rebecca Clement (via electronic mail to rebecca.clement@la.gov)
Amitai Heller (via electronic mail to aheller@advocacyla.org)
Susan M. Meyers (via electronic mail to smeyers@advocacyla.org)
David Williams (via electronic mail to lpdwlaw@ix.netcom.com)