UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MONICA WELLS, on behalf of M.W., a minor, and others similarly situated | CIVIL ACTION |
| VERSUS | |
| KATHY KLIEBERT, Secretary of Louisiana Department of Health and Hospitals, and the LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS | NO. 14–00155-BAJ-RLB |

RULING

Before the Court is Plaintiffs' *Motion to Alter or Amend Judgment and Alternatively for New Trial*.[1] Defendants, the Louisiana Department of Health and Hospitals ("Department") and Dr. Rebekah Gee, in her official capacity as Secretary of the Department, have filed an *Opposition* to which the Plaintiffs have filed a *Reply*.[2] For the following reasons, the Plaintiffs' *Motion* shall be DENIED.

I. RELEVANT PROCEDURAL BACKGROUND

The factual background of this case is set forth in detail in the Court's *Ruling* denying Plaintiffs' *Second Supplemental Motion to Enforce Stipulation and Order*, and it is incorporated by reference herein.[3] The relevant procedural history is set forth below.

---

[1] Doc. 75.
[2] Doc. 81 and Doc. 82.
[3] Doc. 73.

1

On October 24, 2014, the Court entered an *Order of Class Certification and Partial Dismissal*.[4] In its *Order*, the Court also approved the parties' *Stipulation and Order of Dismissal*[5] and directed the parties to comply with the terms set forth therein. The Court explained that it would retain jurisdiction of the action to ensure that the *Stipulation* was implemented and enforced, and to resolve "any disputes that [might] arise in the future regarding the Stipulation and orders, their terms, or the enforcement thereof."[6]

On July 31, 2017, the Court entered a *Ruling* denying Plaintiffs' *Second Supplemental Motion to Enforce Stipulation and Order*.[7] In its *Ruling*, the Court found that the Defendants had not violated the *Stipulation* by not issuing notices of denial during the first two stages of the screening process for service delivery through the Coordinated System of Care ("CSoC").[8] After reviewing the Brief Child and Adolescent Needs and Strengths ("CANS") manual for Louisiana and the CANS Comprehensive form, the Court also found that the Department was not in violation of the *Stipulation* for using the CANS measurement terms without offering an additional definition or explanation for said terms.[9] Finally, the Court found that the Department was not in violation for instructing Molina, its contractor that issues prior authorizations, not to issue notices of denial to recipients when the reasons for denial are (1) the requested procedure is specialty restricted (Code 237); (2) when the

---

[4] Doc. 20.
[5] Doc. 15-1.
[6] Doc. 20.
[7] Doc. 73. The *Ruling* was signed by Judge James J. Brady on July 31, 2017, but not entered into the record until August 1, 2017.
[8] Doc. 73, p. 9.
[9] Doc. 73, pp. 13-14.

2

requested services are the responsibility of a nursing home or Intermediate Care Facility ("ICF/DD") (Code 988); (3) when the procedure does not require prior authorization (Code 025); and (4) when an invalid procedure code was used to request the item or service (Code 057).[10]

Within 28 days of the Court's *Ruling*, the Plaintiffs filed a *Motion to Alter or Amend Judgment and Alternatively for New Trial*.[11] Plaintiffs argue that the Court's July 31, 2017 *Ruling* is "based on clear error and is manifestly unjust" on the following three grounds: the Court's "1) misidentificat[ion of] the timeframe upon which Plaintiffs filed their First Motion to Enforce; 2) err[or] in ruling that services are not denied during the 'initial screening' stages of the CSoC waiver, because services are available during the 'presumptive eligibility' stage; and 3) err[or] in ruling that there are no further definitions of the terms 'mild,' 'moderate,' and 'severe' in the Child and Adolescent Needs and Strengths (CANS) tool used in Stage 3 of [the] CSoC eligibility process."[12] The Defendants disagree with the Plaintiffs on each point.

---

[10] Doc. 73, pp. 14-19.
[11] Doc. 75. Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a party may request that a court alter or amend judgment within 28 days of the entry of the judgment.
[12] Doc. 75, p. 1; Doc. 75-1, p. 1.

3

## II. LAW

Plaintiffs seek the entry of an order pursuant to Rule 59 of the Federal Rules of Civil Procedure to alter or amend the Court's July 31, 2017 *Ruling*.[13] A Rule 59(e) motion to alter or amend a judgment "calls into question the correctness of a judgment."[14] District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment."[15] Nevertheless, a motion for reconsideration of a judgment under Rule 59(e) is "an extraordinary remedy that should be used sparingly."[16] Amending a judgment under Rule 59(e) is appropriate: "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact."[17] A Rule 59(e) motion may not be used to re-litigate matters that have been resolved to the movant's dissatisfaction.[18] Nor is a Rule 59(e) motion a "proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment."[19]

In the alternative, Plaintiffs seek a *Motion for New Trial*. Rule 59(a)(1)(B) of the Federal Rules of Civil Procedure permits the granting of new non-jury trials (e.g., bench trials). However, because there has been no trial in this matter, the Court

---

[13] Doc. 75.
[14] *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004)(quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).
[15] *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).
[16] *Templet*, 367 F.3d at 479.
[17] *Demahy v. Schwarz Phama, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012)(citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).
[18] *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 (5th Cir. 1989); *In re Self*, 172 F.Supp.2d 813, 816 (W.D.La. 2001).
[19] *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

4

shall analyze Plaintiffs' alternative *Motion for New Trial* under the same standard applicable to Rule 59(e) motions to alter or amend judgments.

### III. ANALYSIS

#### A. Factual Error

Plaintiffs argue that a factual error made by the Court in its *Ruling* "is significant and merits correction as it incorrectly implies that Plaintiffs have been overly litigious or hasty in their action to seek judicial enforcement."[20] In its *Ruling*, the Court erroneously stated that the Plaintiffs had filed their *Motion to Enforce Stipulation* "less than one month" from the date the Court entered an *Order of Class Certification and Partial Dismissal*. The relevant portion of the *Ruling* states as follows:

> On October 24, 2014, the Court entered an *Order of Class Certification and Partial Dismissal* . . . In its *Order*, the Court also approved the parties' *Stipulation and Order of Dismissal* and directed the parties to comply with the terms set forth therein. The Court explained that it would retain jurisdiction of the action to ensure that the *Stipulation* was implemented and enforced, and to resolve "any disputes that [might] arise in the future regarding the Stipulation and orders, their terms, or the enforcement thereof."
>
> **Less than a month later, on November 17, 2015**, the Plaintiffs filed a *Motion to Enforce Stipulation*, which was opposed.[21]

Although the Court incorrectly described the filing of Plaintiffs' first *Motion to Enforce Stipulation* as being less than a month from the October 24, 2014 *Order*, it is clear that the November 17, 2015 date upon which this *Motion* was filed and was accurately captured in the Court's *Ruling*, occurred more than one year later.

---

[20] Doc. 75-1, p. 3.
[21] Doc. 73, p. 2. (citations omitted)(emphasis added).

5

Even more importantly, this misprint played no part in the Court's analysis or reasoning of its July 31, 2017 *Ruling*. Initially, the Court points out that Plaintiffs' first *Motion to Enforce Stipulation* was not the subject of the Court's *Ruling*; rather, it was the Plaintiffs' *Second Supplemental Motion to Enforce Stipulation and Order*, which was filed on November 22, 2016.[22] Furthermore, the Court stated in its *Ruling* that its analysis would "focus on the issuance and substance of notices of denial during the CSoC process and the [Department's] decision not to require Molina to issue denial notices under all circumstances."[23] Based on the foregoing, the Court finds that its misprint does not amount to manifest error.

**B. Issuance of Notices of Denial During Initial Stages of CSOC Screening Process**

Plaintiffs argue that the Court's *Ruling* is factually and legally erroneous in finding that the notices of denial do not need to be issued during the two initial stages of the screening process for service delivery through the CSoC. Plaintiffs contend that a denial of eligibility during stages 1 and 2 of the CSoC screening process amounts to a "denial of prior authorized services and falls squarely within the definition of denial articulated in the Consent Decree."[24] Plaintiffs also argue that the Court ignored the record demonstrating that services are available during the presumptive eligibility period.[25] The Court disagrees.

---

[22] Doc. 57.
[23] Doc. 73, p. 4.
[24] Doc. 75-1, p. 4.
[25] Doc. 75-1, p. 4.

6

Rule 59(e) does not exist to give the Plaintiffs a "second bite at the apple."[26] In its prior *Ruling*, the Court addressed the very argument Plaintiffs present here: whether the first two stages of the screening process for the CSoC services fall within the scope of the *Stipulation*, thereby requiring written notices of denial.[27] In its reasoning, the Court relied upon the specific definitions of "denial" and "partial denial" as set forth in the *Stipulation*.[28] Contrary to Plaintiffs' position otherwise, the Court also devoted much discussion to the CSoC process and, in doing so, relied upon the Standard Operating Procedures manual for Louisiana CSoC.[29] In finding that denial notices were not required after the initial stages of the screening process (Stage 1, preliminary screening by managed care organization ("MCO"); Stage 2, Brief Child and Adolescent Needs and Strengths Tool ("CANS")), the Court stated as follows:

> [T]he Court finds that the Plaintiffs' interpretation of the terms of denial and partial denial [within the *Stipulation*] is too broad. During the first two stages of the screening process, there have been no requests for prior approval of services made by a Medicaid provider on behalf of the child through Louisiana Medicaid in relation to service delivery through CSoC. As the Court interprets the CSoC process, the first two stages simply operate to determine who will be eligible to make such prior approval requests for those services that the MCO is unable to provide. Because there have been no requests for prior approval of services during the two screening stages, then there can be no denial of any services during these stages.
> However, at the third stage, when a child is determined to be presumptively eligible, requests for prior approval for services are made when the POC for service delivery through the CSoC is developed. Therefore, the Court finds that if, after a more in-depth screening the

---

[26] *Bain Enterprises, LLC, d/b/a Bain Construction v. United Fire & Casualty Co.*, Civ. Action No. 14-00472, 2017 WL 4276831, *1 (W.D. Tex. Sept. 25, 2017)(quotation omitted).
[27] Doc. 73, p. 8.
[28] Doc. 73, p. 8 (quoting definitions from *Stipulation* at Doc. 15-1, p. 3).
[29] Doc. 73, pp. 5-7; 9 (citing to the SOP manual for Louisiana CSoC at Doc. 57-3).

presumptively eligible child is screened out, then a denial of notice is necessary because under the rules of the program the service delivery through the CSoC is being terminated. It is only in this situation that the Department needs to issue a notice because a denial under the terms of the *Stipulation* has occurred.[30]

Based on the foregoing, it is clear that the Court considered the *Stipulation's* definitions for denial and partial denial and applied them to the CSoC process. In doing so, the Court found that the Department need not issue denial notices during the first two stages of the screening process. Moreover, the Court explicitly found that requests for prior approval of services are made for those children who are determined to be presumptively eligible for service delivery through the CSoC.[31] In the event these presumptively eligible children are screened out after more intensive screening (i.e., administration of the Child and Adolescent Needs and Strengths Comprehensive ("CANS Comprehensive") and the Independent Behavioral Health Assessment ("IBHA")), then a notice of denial must be issued.[32]

Overall, the Court concludes that Plaintiffs' Rule 59(e) argument on this issue amounts to nothing more than their disagreement with the Court's finding. In expressing their disagreement, Plaintiffs have simply rehashed those arguments previously made to the Court to support their stance on the issuance of denial notices at all stages of the CSoC process. As previously discussed, however, the Plaintiffs may not use their Rule 59(e) motion to re-litigate matters that the Court resolved to

---

[30] Doc. 73, p. 9.
[31] In its *Ruling* the Court explained that it was an undisputed fact among the parties "that if a child who has been deemed to be presumptively eligible is subsequently found to be ineligible for service delivery through the CSoC, the Department issues denial notices to those children." Doc. 73, p. 7.
[32] Doc. 73, pp. 6-7.

8

their dissatisfaction or to rehash prior arguments.[33] Accordingly, the Court finds that the Plaintiffs have failed to show that the Court was manifestly erroneous in fact or law in finding that denial notices are not necessary during the initial stages of the CSoC screening process.

### C. CANS Measurement Terms

Plaintiffs argue that the Court erred in finding that the terms "mild," "moderate," and "severe" as used in the CANS measurement tool are terms of art that cannot be further expanded upon without diluting the terms or misleading the recipient. In challenging the Court's finding, Plaintiffs argue that the Court solely relied upon unsworn correspondence from the Department to the Court and counsel of record, which made this claim without any citation.

The Plaintiffs' argument is flawed. In its *Ruling*, the Court acknowledged the fact that the Department had submitted a correspondence to the Court and counsel of record advising that the CANS tool "dictates these terms [mild, moderate, and severe]" and that "[n]o alternatives are available for use within the tool, and no further description defines these terms."[34] In reaching its finding, however, the *Ruling* reflects that the Court independently "reviewed the CANS manual for Louisiana as well as the CANS Comprehensive form and agrees with the

---

[33] *Forsythe*, 885 F.2d 289; *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

[34] Doc. 73, pp. 12-13. It is worth noting here that during the May 23, 2017 *Status Conference* with all of the parties, the Court instructed to the Department to provide any additional definitions for the CANS measurement tools. Doc. 71.

9

Department."[35] The Plaintiffs cannot rely on their mischaracterization of the Court's *Ruling* to show manifest error.

Plaintiffs also argue that the Court erred in not considering alternative descriptors in the CANS Manual for the terms "mild," "moderate," and "severe." Specifically, Plaintiffs contend that the CANS Manual's action oriented words of "no evidence," "watchful waiting/prevention," "action," and "immediate/intensive action," should be used by the Department in their CSoC Notices of Denial. However, as the Defendants correctly point out in their *Opposition*, none of these terms are "new" evidence. In their *Reply*, Plaintiffs fail to respond to Defendants' position.[36] The Court finds the Plaintiffs' omission or failure to respond is due to the fact that they cannot dispute this point. The CANS Manual for Louisiana has been considered by the Court and is a part of the record evidence in this case.[37] As such, Plaintiffs could have asserted their argument regarding these "alternative descriptors" before the Court entered its *Ruling*, and yet, they failed to do so. Because Rule 59(e) motions should not be used to raise arguments that could have been offered or should have been raised before entry of judgment, the Court finds that Plaintiffs' *Motion* must fail on this ground.[38]

---

[35] Doc. 73, p. 13.
[36] The fact that these terms were also included in the CANS scoring sheet that Plaintiffs received on June 6, 2017 does not negate the fact that these same terms were included in the CANS Manual for Louisiana. Doc. 75-2, p. 1.
[37] Doc. 65-4 (Exhibit to Defendants' *Opposition to Plaintiffs' Second Supplemental Motion to Enforce Stipulation and Order*).
[38] *Templet*, 367 F.3d at 478-79.

## IV. CONCLUSION

For the foregoing reasons, the Court declines to exercise its discretion to alter or amend its July 31, 2017 *Ruling*.[39] Accordingly, **IT IS HEREBY ORDERED** that the Plaintiffs' ***Motion to Alter or Amend Judgment and Alternatively for New Trial*** is **HEREBY DENIED**.[40]

Baton Rouge, Louisiana, this 20th day of February, 2018.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[39] Doc. 73.
[40] Doc. 75.